**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY ROBERT GALLEGOS II,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 1:16-cv-00064-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Jeffrey Robert Gallegos II ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial

---
[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.
[2] The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment. (ECF Nos. 7, 11).

1

evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed his applications for disability insurance benefits and supplemental security income on February 10, 2012. AR 231-239, 240-243.[3] Plaintiff alleged that he became disabled on March 1, 2008, due to back problems. AR 231-239, 240-243, 258. Plaintiff's applications were denied initially and on reconsideration. AR 163-166,167-170, 172-177, 178-184. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Sharon L. Madsen held a hearing on April 10, 2014, and issued an order denying benefits on May 30, 2014. AR 6-22, 23-45. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied on November 10, 2015, making the ALJ's decision the Commissioner's final decision. AR 1-4, 46. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on April 10, 2014, in Fresno, California. AR 23-45. Plaintiff appeared and was represented by attorney Arianna Burris. AR 9, 25. Impartial Vocational Expert Thomas Dachelet also appeared and testified. AR 25, 41-44.

In response to questions from the ALJ about his daily activities, Plaintiff testified that he has no problems with showering or getting dressed. He does not cook or do household chores. He also does not shop or participate in any social activity. On a typical day, he watches TV with his mother, spends time on the computer, plays with his dogs, and sometimes goes on walks. AR 28-29.

When asked about his back, Plaintiff testified that he experiences constant back pain that radiates down both legs. Activities such as sitting or standing for a long time, walking, bending over, and sleeping all aggravate his pain. When in pain, Plaintiff takes Tylenol and occasionally Vicodin, and he also uses a stimulator (TENS unit) that sometimes helps. He has had injections, but they only helped for the day he received them. Plaintiff had back surgery in 2008 or 2009, but it was considered

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

a failed surgery. Although doctors have wanted to do exploratory surgery, Plaintiff testified that he was not comfortable with that due to his bad experience. AR 30-33.

When asked about his abilities, Plaintiff testified that he can only carry "really light" things, and he cannot carry a gallon of milk or a bag of potatoes. On average, he can sit or stand for about ten to fifteen minutes at a time, and he can walk about a block, but does not climb stairs. Putting on his shoes and socks aggravates his back, and bending down would cause pain. AR 34-35.

When asked about his mental health, Plaintiff testified that as of then he was "fine mentally," but could wake up the next day and have a full psychotic breakdown. AR 35. He also suffers from anxiety that stems from the paranoia of having another psychotic breakdown, which involves hearing voices. When having a breakdown, he has problems concentrating and struggles to get along with his family because of the voices. To treat his mental health issues, he takes Zyprexa and Cymbalta. AR 35-37. In the past, he has had issues with substance abuse, but has been clean for the last two years. However, being clean and sober has not helped with the paranoia or the psychotic breakdowns. AR 38-39.

In response to questions from his attorney, Plaintiff testified that he has psychotic breakdowns about once every other month, and they last for two to three weeks. During that time, he is not able to function normally because he is constantly nagged by the voices he hears, and he argues with his family because they try to tell him that the voices are not real. AR 39. He has been told that the psychotic breakdowns are brought on by things like changes in the weather and high stress levels. AR 40. Aside from hearing voices, Plaintiff also suffers from mood swings, and his medication causes him to bounce his left leg, causing pain. AR 40-41.

When asked if he could work at a job where he was mainly seated, did not have to lift more than about 10 pounds, and it was simple, like watching a surveillance monitor, Plaintiff testified that he could not do such work because he would not be able to focus during a psychotic breakdown. As far as his back pain was concerned, he could work at such a job if he was able to stand, sit and walk around. AR 41. Although he believed he may be able to physically do the job, he did not believe he would mentally be able to do it. AR 41.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE Thomas Dachelet. The VE testified that Plaintiff's past work included delivery driver, warehouse laborer, and warehouse manager. AR 42-43. The ALJ then asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work background as Plaintiff. This person could lift and carry 20 pounds occasionally, 10 pounds frequently, could sit, stand, or walk six to eight hours, could occasionally stop, crouch, crawl, climb and kneel and also could perform simple, routine tasks. The ALJ testified that this person could not do Plaintiff's past work, but there were other light and unskilled jobs available, such as palletizer, garment sorter, and package operator. AR 43.

For the second hypothetical, the ALJ imposed the same elements of the previous hypothetical and added a sit/stand option. The VE testified that the available jobs remained the same, but the number of those jobs would decrease. AR 43-44.

For the third hypothetical, the ALJ changed the weight of the first hypothetical to that of ten pounds; and added that the individual could stand or walk for two hours, sit for six to eight hours; occasionally could stoop, crouch, crawl, climb and kneel; would need to avoid concentrated exposure to heights and dangerous machinery; and could perform simple, routine tasks. The VE testified that this individual could perform sedentary, unskilled jobs such as document preparer, ampoule sealer, and weight tester-paper. AR 44.

For the fourth hypothetical, the ALJ added to the previous hypothetical that this person would miss at least four days a month. The VE testified that this was an accommodation outside what is normally found. AR 44.

For the fifth hypothetical, the ALJ added to hypothetical three that the person would be off task fifteen percent of the time. The VE testified that this was also an accommodation outside what is normally found. AR 44.

**Medical Record**

The relevant medical record was reviewed by the Court, and is referenced below as necessary to this Court's decision.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 9-22. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2008, the alleged onset date. AR 11. Further, the ALJ identified lumbar degenerative disc disease status post L4-5 and L5-S1 fusions, obesity, paranoid type schizophrenia, and polysubstance dependence as severe impairments. AR 11. Nonetheless, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 11-13.

Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and frequently, sit for six to eight hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday, He could occasionally stoop, crouch, crawl, climb, and kneel, but must avoid concentration exposure to a heights and dangerous machinery and was limited to simple routine tasks. AR 13-20. The ALJ determined that Plaintiff was unable to perform any past relevant work, but there were jobs existing in significant numbers in the national economy that he could perform. AR 21. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 21.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff argues that the ALJ committed reversible error by (1) failing to provide an adequate basis for ignoring the opinions of his treating physicians; and (2) improperly discounting his pain testimony.[5]

### I. The ALJ Did Not Err in Discounting the Treating Physician Opinions

#### A. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[5] In his opening brief, Plaintiff also alleged that the ALJ erred by failing to resolve the apparent conflicts in the VE's testimony at step five of the sequential evaluation. (ECF No. 15 at pp. 24-26.) However, in his reply brief, Plaintiff affirmatively withdrew that argument. (ECF No. 17 at p. 8 n. 2.)

an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating physician's opinion is not contradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### B. The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. Petralgia's Opinion

Plaintiff first argues that the ALJ failed to provide sufficient reasons for rejecting the opinion of his treating physician, Dr. John Petraglia, M.D. Specifically, Plaintiff contends that because Dr. Petraglia's opinion regarding Plaintiff's physical impairments was not contradicted, the ALJ was required to provide clear and convincing reasons to reject that opinion, but failed to do so. (ECF No. 15 at pp. 18-21.)

On April 5, 2012, Dr. Petraglia completed a Residual Functional Capacity Questionnaire. AR 572-573. Dr. Petraglia, who had been treating Plaintiff monthly for two years, identified Plaintiff's diagnosis as failed back surgery/post-laminectomy syndrome with a poor prognosis. Dr. Petraglia opined that Plaintiff's symptoms, which included neurologic pain, dizziness, gait instability and mechanical sexual dysfunction, were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks. Dr. Petraglia estimated that Plaintiff could walk less than one block without rest or significant pain, could sit 5 minutes and stand/walk 5 minutes at time, could sit for a total of 3 hours in an 8-hour workday and stand/walk for 1 hour in an 8-hour workday, and needed a job that permitted shifting positions at will. Additionally, Plaintiff would need to take more than 6 unscheduled breaks each day for 10 minutes each. Dr. Petraglia also opined that Plaintiff could occasionally lift and carry only 10 pounds, and had limitations with repetitive reaching, handling and fingering. Dr. Petraglia estimated that Plaintiff was likely to be

absent from work as a result of his impairments or treatments more than four times a month. AR 572-73.

In evaluating Dr. Petraglia's opinion, the ALJ reasoned as follows:

> I give the findings and opinions of Dr. Petraglia little weight. His treating records did not contain a full mental status examination. He is not a psychiatrist. These factors placed him in a poor position to comment on the claimant's attention and concentration. Furthermore, the claimant reported he did not have difficulty concentrating or paying attention (Exhibit 5E). The physical limitations he opined were refuted by other evidence showing the claimant could sit comfortably and had greater lumbar motion (Exhibit 7F, pp. 3 and 11). The physical limitations Dr. Petraglia opined were inconsistent with the February 2014 clinic visit showing the claimant had effective pain relief with Norco, had a normal activity level, only moderate pain, and normal extremity motion (Exhibit 24F, pp. 2-4). His statement that the claimant could only sit or stand in 5-minute increments was refuted by the claimant's presentation at hearing – where he both sat and stood for more than five minutes. His statement that he went to the movies and shopped for groceries for up to 3 hours at a time suggests greater sitting and standing tolerance. Furthermore, the claimant testified at hearing that he could sit for up to 15 minutes.

AR 14-15. Following his assessment of Dr. Petraglia's opinion, the ALJ assigned "great weight" to the contradictory opinions of the state agency physicians, Drs. L. Bobba and K. Quint, who opined that Plaintiff had the physical RFC to lift and/or carry 10 pounds both occasionally and frequently, stand and/or walk 2 hours, sit for more than 6 hours in an 8-hour workday, push and/or pull on an unlimited basis, occasionally climb, balance, stoop, kneel, crouch, and crawl, but needed to alternate between standing, walking, and sitting every two hours and avoid concentrated exposure to hazards, such as machinery and heights. AR 16, 54-56, 63-69, 97-98, 100-02, 116-17, 119-21. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor if he provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Here, the ALJ proffered specific and legitimate reasons supported by substantial evidence to discount Dr. Petraglia's opinion. First, the ALJ rejected Dr. Petraglia's opinion regarding Plaintiff's limitations in concentration and attention because such limitations were not supported by his treating records, which did not contain a full mental status examination. AR 14. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including his own treatment notes. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009)

(contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). As indicated by the ALJ, Dr. Petraglia's treatment records (and those from pain management) did not contain findings regarding Plaintiff's attention and concentration, and Plaintiff cites none. *See* AR 533-69, 575-83, 590-36, 639-53. Further, certain of those records indicated that Plaintiff's mental status was "intact." *Id.*

Second, the ALJ discounted Dr. Petraglia's opinion regarding Plaintiff's attention and concentration because Dr. Petraglia was not a psychiatrist. In other words, the ALJ discounted Dr. Petraglia's assessment of Plaintiff's mental limitations because he was not a specialist in the relevant medical field. AR 14. An ALJ is entitled to give more weight to the opinion of a specialist than to the opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"); *Milina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (opinion of a doctor who specializes in the relevant field is entitled to greater weight), citing *Holohan v. Massanari*, 246 F3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to . . . the opinions of specialists concerning matters relating to their specialty over that of a nonspecialists.").

Third, the ALJ discounted Dr. Petraglia's opinion regarding Plaintiff's mental limitations because they conflicted with Plaintiff's own report. An ALJ properly may consider conflicts between a treating physician's opinion and a claimant's testimony. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *see also Morgan v. Comm'r of*

*Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion). In this instance, the ALJ considered the contrast between Dr. Petraglia's assessment of limitations in attention and concentration and Plaintiff's report that he did not have difficulty concentrating or paying attention. AR 14, 293. Furthermore, Plaintiff's mother's testimony and Plaintiff's own testimony all contradicted Dr. Petraglia's opinion regarding Plaintiff's mental limitations. For instance, Plaintiff's mother reported that Plaintiff needed no reminders to take care of personal needs or take medicine, and she did not identify problems with attention or concentration. AR 268, 271. Similarly, Plaintiff's testimony both at the administrative hearing and on his Function Report indicated that he did not have difficulty focusing, concentrating or paying attention due to pain. AR 35, 37, 293.

Fourth, the ALJ discounted Dr. Petraglia's opinion regarding Plaintiff's physical limitations because those limitations were refuted by other objective evidence in the record. AR 14. An ALJ may discredit a treating physician's opinion that is conclusory, brief and unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. For instance, the ALJ relied on evidence in the record demonstrating that Plaintiff could sit comfortably and had greater lumbar motion. AR 657-58, 665. Although Plaintiff argues that these same examinations revealed limitations in his lumbar range of motion, the ALJ only remarked that these examinations identified greater range of motion than that contemplated by Dr. Petraglia's opinion. Moreover, the ALJ cited more recent evidence from February 2014 demonstrating that Norco effectively controlled Plaintiff's symptoms, and he had a normal activity level, only moderate pain and normal range of motion in his extremities. AR 14, 875-77. Plaintiff does not challenge these findings.

Additionally, the ALJ discounted Dr. Petraglia's opinion regarding Plaintiff's physical limitations because it conflicted with Plaintiff's own testimony and reports. AR 15. As discussed above, an ALJ properly may consider conflicts between a treating physician's opinion and a claimant's testimony. *See Magallanes*, 881 F.2d at 754 (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *see also Morgan*, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that

claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion). Here, the ALJ pointed out that Plaintiff's own report that he went to the movies and shopped for groceries for up to 3 hours at a time suggested greater sitting and standing tolerance than Dr. Petraglia's opinion that Plaintiff could on sit or stand in 5-minute increments. AR 15, 291-92. The ALJ also considered Plaintiff's testimony at the hearing indicating that he could sit for up to 15 minutes at a time, along with observations that Plaintiff both sat and stood at the hearing from more than 5 minutes. AR 15, 34.

### C. The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. Muir's Opinion

Plaintiff argues that the ALJ erred by disregarding Dr. Muir's opinion regarding Plaintiff's mental impairments. (ECF No. 15 at pp. 20-22.)

On January 24, 2014, Dr. Shari Muir completed a Mental Disorder Questionnaire for Evaluation of Ability to Work form. Dr. Muir opined that Plaintiff had abnormalities in the following areas that would significantly impair his ability to perform simple work for two hours at a time or for eight hours per day: memory and concentration. Dr. Muir also opined that Plaintiff's mood or affect would impair his ability to work, and indicated that Plaintiff's anxiety and paranoia were persistent, resistant to treatment, had been difficult to stabilize and would preclude Plaintiff's ability to function in an occupational setting. Dr. Muir indicated that Plaintiff had been diagnosed with paranoid schizophrenia and he had significant impairments, including delusional or paranoid thoughts and social isolation, which would impair his ability perform full-time work, week after week. Dr. Muir also indicated that Plaintiff's social function had become deficient to the point that it would impair his ability to work with supervisors, co-workers or the public. Dr. Muir did not believe Plaintiff's condition was likely to improve within the next 12 months. AR 823-24.

The ALJ gave the findings and opinions of Dr. Muir little weight, reasoning as follows:

> The claimant's mother reported spending time daily with the claimant. She stated he composed and recorded music, attended church, socialized with his friends, and could pay attention as needed. She stated he followed instructions well. Likewise, the claimant reported that he could pay attention as needed, did not have trouble concentrating, and could follow instructions. He stated he went to the movies with others and went to

gatherings with his friends. At hearing, he testified he did not have trouble focusing. He stated he was "fine" mentally. These factors refute the limitations opined by Dr. Muir[.]

AR 18. Dr. Muir's findings were contradicted by the opinion of the state agency examiner, Dr. Randall J. Garland, who opined that by September 24, 2013, Plaintiff had the mental RFC to perform unskilled tasks with limited social contact. AR 99, 103-05. As Dr. Muir's opinion was contradicted by another doctor, the ALJ was required to provide "specific and legitimate" reasons supported by substantial evidence in order to reject that opinion. *Lester*, 81 F.3d at 830–31.

Here, the ALJ provided specific and legitimate reasons supported by substantial evidence to discount the opinion of Dr. Muir. As one reason, the ALJ discounted Dr. Muir's opinion regarding significant impairments based on conflicting testimony and reports from Plaintiff. AR 18. As indicated above, an ALJ properly may consider conflicts between a treating physician's opinion and a claimant's testimony. *See Magallanes*, 881 F.2d at 754; *see also Morgan*, 169 F.3d at 601-02. In this instance, the ALJ discounted Dr. Muir's opinion that Plaintiff had significant abnormalities with memory and concentration, paranoid thoughts and social isolation because it was inconsistent with Plaintiff's reports and testimony that he could pay attention as needed, could follow instructions, did not have trouble focusing, was "fine" mentally, and attended movies with others and gatherings with friends. AR 35-37, 292-293.

Plaintiff contends that the ALJ improperly relied on his testimony that he did not have trouble focusing and that he was fine mentally. Plaintiff argues that the ALJ's conclusion lacks evidentiary support because Plaintiff testified only that he was fine mentally at the time, but "tomorrow [he] could wake up and have a full psychotic breakdown," and during those breakdowns he has problems concentrating and "can't do anything except focus on the voices." AR 35-37. While Plaintiff correctly notes this additional testimony, he downplays the corroborating testimony from Plaintiff's mother, also relied upon by the ALJ, which indicated that Plaintiff composed and recorded music, attended church, socialized with his friends, could pay attention as needed and followed instructions well. AR 18, 266-272. The ALJ properly resolved the conflict between the opinion of Dr. Muir and other evidence in the record. *See, e.g., Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)

12

(responsibility of the ALJ to resolve conflicts and ambiguities in the record and determine the credibility of medical sources).

**II. The ALJ Did Not Commit Reversible Error in Evaluating Plaintiff's Testimony**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective testimony. (ECF No. 15 at pp. 22-24).

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.[6]

Here, the ALJ found that Plaintiff satisfied the first step of the analysis and made no finding of malingering. At the second step of the analysis, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . . " AR 20. Therefore, the ALJ's reasons for discounting the alleged severity of Plaintiff's symptoms must be specific, clear and convincing. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015).

With respect to Plaintiff's subjective testimony, the ALJ determined that Plaintiff was not fully credible based on several inconsistencies in Plaintiff's testimony that undermined his complaints. AR 20. An ALJ properly may consider a claimant's inconsistent statements. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also* SSR 16-3p, 2016 WL 1119029 at *8 ("We will consider

---

[6] At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, was in effect and explained the factors to be considered in assessing credibility. In March 2016, that ruling was superseded by SSR 16-3p, 2016 WL 119029. The Ninth Circuit has not expressly ruled on whether SSR 16-3p applies retroactively, but has determined that SSR 16-3p "makes clear what [its] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness. *Trevizo v. Berryhill*, --- F.3d ---, 2017 WL 4053751, at *9 n. 5 (9th Cir. Sept. 14, 2017) (citing SSR 16-3p). In this instance, it is not necessary for the Court to determine whether SSR 16-3p applies retroactively as the outcome would be the same under either SSR 16-3p or SSR 96-7p.

13

an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence;" "we will consider the consistency of the individual's own statements"); SSR 96-7p, 1996 WL 374186 at *5 (adjudicator must consider "consistency of the individual's own statements"). In this instance, the ALJ expressly contrasted Plaintiff's testimony that he did not shop or engage in social activities with his statement in a Function Report that he shopped for up to three hours and socialized with others by going to the movies, social events, and gatherings. AR 20, 28, 291, 292. The ALJ also contrasted Plaintiff's testimony that he did not perform household chores with statements in his disability report that he did light laundry. AR 20, 28, 290.

Plaintiff initially challenges the ALJ's findings regarding Plaintiff's testimony, arguing that the activities upon which the ALJ relies are dependent upon Plaintiff's level of pain. (ECF No. 15 at p. 23.) Specifically, Plaintiff cites statements from his Function Report that he "attends church and other family functions if the pain from [his] injury allows" and he "attends movies, social events and gathering[s] with friends if not in too much pain." AR 288, 292. However, Plaintiff omits that Plaintiff's Function Report also indicated that he attended movies, social events and gatherings with friends "2-3x monthly" and regularly attended "church and social groups." AR 292. Further, Plaintiff identified no limitations in his ability to shop for up to three hours. AR 291.

Plaintiff also contends that it was error for the ALJ to find inconsistencies in his statements because he testified at the hearing nearly two years after his Function Report, and thus his hearing testimony illustrates worsening pain. (ECF No. 15 at pp. 23-24.) However, Plaintiff has not adequately demonstrated that his condition deteriorated between the time of his May 2012 Function Report and the April 2014 hearing. Although Plaintiff asserts in his reply that the record demonstrates a deteriorating situation, the medical evidence cited by Plaintiff from 2008, 2009, 2010 and 2011 (*see* AR 349-350, 351, 353, 371-403, 414, 426, 425-459, 471, 474, 494, 499, 545-547, 629, 847) predates both the 2014 hearing and the 2012 function report. (ECF No. 17 at p. 6.)

Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by

substantial evidence in the record, it is not the Court's role to second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security and against Plaintiff Jeffrey Gallegos II.

IT IS SO ORDERED.

Dated: **September 25, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE